ATLAS STEEL & WIRE CORPORATION, A CORPORATION, APPELLANT, v. L & M CONSTRUCTION CHEMICALS, INC., A CORPORATION, ET AL., APPELLEES.

321 N.W.2d 64

Filed June 25, 1982. No. 44178.

Douglas E. Quinn of Thompson, Crounse and Pieper, for appellant.

William M. Homan, for appellee L & M.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is an action brought by the plaintiff, Atlas Steel & Wire Corporation, to recover an amount allegedly due under an oral contract for the purchase of goods entered into between Atlas and Jack Bolin. L & M Construction Chemicals, Inc., was named as a defendant in the action, along with Bolin, Lawrence

E. Schwietz, and J & L Supply & Steel Company. A jury trial was waived and a trial to the court resulted in a judgment in favor of L & M and against the plaintiff Atlas. It is this judgment only which forms the basis of the appeal by Atlas. The only issue facing the court is whether sufficient evidence existed to hold L & M liable to Atlas for payments due under the contract. We affirm.

J & L Supply was a business entity formed by Bolin and Schwietz under what was loosely called an "oral agreement to make a partnership." Its office was located at 1219 South Gallatin Street, Jackson, Mississippi. According to Schwietz, under the terms of their "oral partnership" Bolin was not empowered to purchase goods on credit without Schwietz's prior approval and he, Schwietz, had not given such approval for the purchase of the goods which formed the subject matter of this lawsuit.

Schwietz was the president of L & M Construction Chemicals, Inc., an Omaha, Nebraska, corporation with its principal and only place of business in Omaha. According to Schwietz, Bolin has no connection with L & M, and L & M had no connection with J & L.

According to the testimony of Alfred Theriot, an agent of Atlas, during January of 1979 he received, in his capacity as Atlas' agent, an order from Bolin for certain goods on a J & L Supply & Steel Company purchase order form. Theriot claimed that he then informed Bolin that the goods would not be sold on credit due to J & L's lack of a credit history. He went on to say that Bolin responded by telling him to contact Schwietz at L & M in Omaha. Upon making such contact and informing Schwietz that the dollar amount of the order was approximately $9,500, Theriot claimed that Schwietz instructed him to ship the goods to Bolin and invoice L & M. As a result of that conversation, Theriot said, the goods were shipped.

The record reveals that in April of 1979, a check for $1,000 was received by Atlas in the mail, contained in a J & L letterhead envelope with the name L & M written over the top of the printing and mailed from Omaha. Mr. Theriot did not say who signed the check or what name was contained on the check itself. Theriot did go on to say that he wrote to Schwietz inquiring about the balance of the account, but received no response. Two phone calls were made to Schwietz by Theriot, according to the testimony of the latter, the first without response, and being told on the second that Schwietz would get back to him. He never did.

According to the testimony of Mr. Schwietz, he recalled receiving only one demand letter from Atlas, which letter he was sure would have been forwarded to Bolin. He also recalled receiving a telephone call from Mr. Theriot in May regarding the sale of these goods, but he advised Theriot at that time that the partnership had been dissolved and that Bolin had assumed full responsibility for all of J & L's merchandise. Mr. Schwietz categorically denied ever talking over the telephone to Mr. Theriot, other than the one call in May, and in corroboration of this statement, he submitted his telephone log which he alleged contained all calls received by him since the first of January of 1979, with the caller's name and an explanation of the subject of the call noted on the log. No other call from Theriot appeared on that log. Mr. Schwietz did admit to having issued the $1,000 check to Atlas on J & L Supply's Jackson, Mississippi, checking account, but claimed that he did so only because Bolin had informed him that he, Bolin, was in a position to sell the merchandise and that he had funds to cover the amount paid.

It should be apparent from this recitation of the record that there was a direct dispute between the only two witnesses who testified as to whether or not there was ever an agreement that L & M was to pur-

chase or would furnish credit for the purchase of the merchandise with which we are here concerned.

As stated in *Aurora Cooperative Elevator Co. v. Larson,* 204 Neb. 755, 758, 285 N.W.2d 498, 500-01 (1979): "The judgment of a trial court in an action at law where a jury has been waived has the effect of a jury verdict and it will not be set aside on appeal unless clearly wrong. Where trial is to the court, a general finding that the judgment should be for a certain party warrants the conclusion that the trial court found in his favor on all issuable facts. . . .

"In determining whether the evidence supports the findings of the trial court in an action at law where a jury has been waived, the evidence must be considered in the light most favorable to the successful party, all conflicts must be resolved in his favor, and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence."

On the basis of this record, we cannot say that the findings and judgment of the District Court were clearly wrong. Accordingly, we affirm its judgment in this action.

AFFIRMED.